IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAMBERT O. TELESFORD, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 20-5439 |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of Social Security | : | |
|     Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    November 30, 2021

      This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Lambert O. Telesford Jr. ("Telesford") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 17); Defendant's Contested Motion to Remand ("Def. Mot.") and Memorandum in Support ("Def. Br.") (Doc. 18); Plaintiff's Response to Defendant's Motion to Remand ("Pl. Resp.") (Doc. 19); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 16) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ and to remand the matter to the Commissioner for a calculation of benefits. The Commissioner, recognizing deficiencies in the ALJ's decision, seeks the entry of an order remanding for further consideration of Telesford's claim. For the

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reasons set forth below, we grant Defendant's motion and remand for further consideration but not for payment of benefits.

I.     **FACTUAL AND PROCEDURAL HISTORY**

Telesford filed his claim for DIB and SSI on June 27, 2018, alleging disability beginning on August 31, 2013. He later amended his onset date to August 20, 2017, the date of a motor vehicle accident in which he sustained injuries. (R. 18.) He had a high school education and work history as a carpenter and was 46 years old on his amended onset date. In his application materials, he identified left knee pain, back pain, anxiety and depression as the basis for his disability. He underwent arthroscopic reconstructive surgery of the left knee in June 2018, the month in which he filed his claim.

The state agency denied his claim on December 19, 2018, and he requested a hearing with an ALJ. Telesford, who was represented by counsel, testified at the August 28, 2019 hearing that he walks with a cane, takes his son to and from school, and works odd jobs when they are available but that he otherwise sits at home most of the day. He attends therapy and takes medication for depression. (R. 17.) An impartial vocational expert ("VE") also testified at the hearing, addressing the vocational implications of various limitations described in hypothetical questions posed by the ALJ.

On November 15, 2019, the ALJ issued a written decision regarding Telesford's application. She found that he had not been disabled at any time since the August 20, 2017 amended onset date in that he could perform a limited range of sedentary work where his tasks were simple and repetitive and where the work involved only occasional changes in the work setting and only occasional contact with the public and co-workers. (R. 16.) Telesford asked the Appeals Council to review the decision, but on September 2, 2020 that body determined that there

was no reason to set aside the ALJ's decision, rendering it the final decision of the Commissioner. This litigation followed.

## II.     STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Telesford could perform jobs that exist in sufficient numbers in the national economy is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *See also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.    DECISION UNDER REVIEW

The issue before the ALJ at the time of the November 15, 2019 decision under review was whether Telesford had been disabled within the meaning of the Act at any time since August 20, 2017. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) to reach her conclusion. At Step One, she found that Telesford had not engaged in substantial gainful activity since the alleged onset date.[2] (R. 13, Finding No. 2.) At Step Two, she found that Telesford suffered from severe, medically-determinable impairments, specifically related to his left knee (status post left knee reconstructive surgery and left knee focal articular

---

[2] The ALJ acknowledged that Telesford performed odd jobs when they were available but found that this work did not rise to the level of substantial gainful activity. (R. 13.)

3

cartilage defect) and degenerative disc disease, as well as anxiety and depression. (R. 14, Finding No. 3.) At Step Three, however, she concluded that Telesford did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (R. 14, Finding No. 4.) Had the ALJ found that Telesford satisfied the criteria of Step Three, he would have been found disabled. It is this finding that is the subject of dispute before the Court, given the Commissioner's willingness to remand on other grounds and Plaintiff's insistence that he should have been found disabled at Step Three.

As the ALJ did not find Telesford disabled at Step Three, the analysis continued with the ALJ's determination of Telesford's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ found:

> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with simple, repetitive tasks with only occasional changes in the work setting, and occasional contact with the public and coworkers[.]**

(R. 16, Finding No. 5.) Relying upon the testimony of the VE at the hearing, the ALJ concluded at Step Four that someone with this RFC would not have been able to perform Telesford's past relevant work, which was at the medium or heavy exertional levels. (R. 23, Finding No. 6.) She then proceeded to Step Five, at which she was to assess whether Telesford was capable of performing any jobs that exist in significant numbers in the national economy considering his age (as a "younger individual" as of his application date), his education, his English language capability, and his RFC. At the hearing, the VE testified that there were jobs that an individual with the above RFC could perform, such as laminator, lamp shade assembler, and compact assembler. (R. 24.) Citing this testimony, the ALJ concluded that Telesford was capable of

4

performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R. 23-24, Finding Nos. 10-11.)

## IV. DISCUSSION

In his opening brief in support of his request for review, Telesford made two requests of the Court. He first requested that the final decision in his case be "reversed" in that "a presumptively improper legal standard was utilized to adjudicate this disability claim at the administrative level" due to an allegedly constitutionally defective delegation of authority from former Commissioner Andrew Saul to the ALJ. (Pl. Br. at 5-6.) His second request concerns the ALJ's finding at Step Three. He contends that the ALJ erred "in failing to find" that his knee impairment meets or equals Sections 1.02 and 1.03 of the listings of impairments, which address "major dysfunction of a joint" and "reconstructive surgery or surgical arthrodesis of a major wight-bearing joint," respectively. (Pl. Br. at 6.) He argues that "[t]he evidence clearly supports a conclusion that [his] condition meets the requirements of a listed impairment" and that benefits should be awarded to him, or "[a]lternatively," his case should be remanded "for consideration of his condition applying the proper regulatory standard" – an apparent reference to his contention regarding the status of the Commissioner. (Pl. Br. at 18.)

Upon review of Plaintiff's brief and the record, the Commissioner "determined that further evaluation of Plaintiff's claim is warranted" and moved for a remand of this case to the Commissioner for further proceedings. (Def. Mot. at 1.) In her motion, the Commissioner commits to directing an ALJ to re-evaluate Plaintiff's RFC, consider all of the relevant opinion evidence in the file, afford Plaintiff the opportunity for a new hearing, and issue a new decision. (*Id.* at 2.) Plaintiff, however, does not consent to the proposed remand. Rather, he continues to seek an outright award of benefits, which the Commissioner contends is not an appropriate remedy at this juncture. (*Id.*) In his formal response to Defendant's motion to remand, Plaintiff asserts

that the record is fully developed to show that the requirements of the Listings are met and that no purpose would be served in remanding the case to the Commissioner. (Pl. Resp. at 3-4.) In the alternative, Plaintiff requests that if the case is remanded for further consideration, his case be considered against the version of the Listings that were in effect on the date of the ALJ's September 2, 2020 decision and not the amended provisions that were published on December 3, 2020 and are currently effective. (*Id.* at 2, 4.)

### A.   Is it appropriate for the Court to consider awarding benefits at Step Three of the sequential evaluation process?

In light of the Commissioner's voluntary remand motion concerning the RFC finding applied at Step Five, we consider Plaintiff's opposition to remand to reflect his principal request for a ruling requiring the payment of his case. This would require a different finding at Step Three, the step at which Plaintiff's impairments were evaluated in light of the Listings and the earliest step at which a claimant can be found disabled.

We share the Commissioner's concern that Plaintiff is asking this Court to make *de novo* factual findings as to how the record supports his Listing arguments in a manner that is not consistent with the limited scope of review established by 42 U.S.C. § 405(g). We thus first address the question of whether the law permits the review and relief requested by Plaintiff in the circumstances presented here.

In *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984), the Third Circuit explored the circumstances under which a court might reverse or modify an administrative decision with or without a remand to the Commissioner for a rehearing. The court noted that an award of benefits should be ordered "only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22. In such cases, it would be "unreasonable

for a court to give the ALJ another opportunity to consider new evidence concerning the disability because the administrative proceeding would result only in further delay in the receipt of benefits." *Id*. at 222. The Third Circuit found that a direct award of benefits was appropriate in that case because of "several substantial errors in the administrative record" and the fact that it was doubtful that the Commissioner would be able to produce new probative evidence on the Step Five question as to which she bore the burden of proof. *Id*. The court also noted that the error had not been cured in a prior remand and commented upon the lengthy delay in the adjudication and re-adjudication of the claimant's case to that point.

In considering a more recent case in light of *Podedworny*, our Court of Appeals reiterated that:

> When reversing the SSA's decision under 42 U.S.C. § 405(g), [the federal court] "may choose to remand to the Secretary for a further hearing or simply direct the district court to award benefits." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir.1984). "The decision to direct the district court to award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Id*. at 221-22. Such a decision is especially appropriate when the disability determination process has been delayed due to factors beyond the claimant's control. *Id.; see also Morales*, 225 F.3d at 320.

*Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 357-58 (3d Cir. 2008). The court ultimately ordered that benefits be paid to the plaintiff, noting that "Brownawell, like the claimants in *Podedworny* and Morales, has waited a remarkably long time for a final decision on her disability application, which was filed eight years ago." *Id*. at 358 (citing *Podedworny*, 745 F.2d at 223 (directing an award of benefits five years after claimant filed for disability); *Morales*, 225 F.3d at 320 (directing an award of benefits ten years after claimant filed for disability)). The Third Circuit noted that in the cases of both Morales and Brownawell, the claimant "had two hearings before an

ALJ followed by two petitions to the appeals council, two appeals to the district court, and the present appeal to the court of appeals," such that "the record is unlikely to change." *Id.* (quoting *Morales*, 225 F.3d at 320).

Since these decisions, a number of courts have considered whether the delay for re-adjudication of a claimant's disability application merit an outright award of benefits. In *Podedworny* for example, the claimant's claim had been pending for five and a half years, and the court noted an earlier case involving a seven-year battle. In *Diaz v. Berryhill*, benefits were awarded where the claim had been pending for eleven years, with three hearings and a prior federal court remand, and the court described a "tortured and protracted administrative history." *Diaz v. Berryhill*, 388 F. Supp. 3d, 382 (M.D. Pa. 2019). We have never recommended an award of benefits, however, in a case that had only one hearing and where the claim had been initiated only three years earlier. This case simply does not present the extraordinary circumstances that we believe would properly warrant undertaking the unusual task of affirmatively finding whether or not the claimant meets the definition of disability. We will not do so here.

**B.      Should we direct the Commissioner on remand to apply the Listings requirements that were in effect at the prior hearing?**

Having concluded that the matter should be remanded in the manner requested by the Commissioner rather than Plaintiff, we must consider Plaintiff's request that we direct the Commissioner to apply a particular version of her Regulations to the consideration of Telesford's impairments on remand.

As the parties are aware and acknowledged in their briefs, the Listings were amended effective April 2, 2021. As a result of this amendment, Listings 1.02 and 1.03 were deleted and new musculoskeletal listings were added. Plaintiff requests that any renewed consideration of his claim utilize the version of the listings that were in effect at the time of the ALJ's November 15,

2019 decision – i.e., the version that includes Listings 1.02 and 1.3 – and not the version now in effect.  He contends that this approach would "avoid penalizing the Plaintiff for the Commissioner's acknowledged legal errors." (Pl. Reply at 4.)  Plaintiff does not, however, provide any authority for the notion that this Court can dictate to the Commissioner how to apply her own Regulations in this regard.  The Commissioner did not file a reply addressing the question of what version of the Listings would be applied to Telesford's case on remand but simply noted in her remand motion that his claim was considered by the ALJ under a scheme that has since been amended.  (Def. Br. at 4 n.2.)

We note, as Plaintiff seems to anticipate, that his claim is to be subject to the new Regulations when it is adjudicated on remand.  As the Commissioner's notice in the Federal Register provides:

> When will we begin to use these final rules?
>
> As we noted in the dates section of this preamble, these final rules will be effective on April 2, 2021. We delayed the effective date of the rules to give us time to update our systems, and to provide training and guidance to all of our adjudicators before we implement the final rules. The current rules will continue to apply until the effective date of these final rules. When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, *and to claims that are pending on or after the effective date*.[FN2]

Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 FR 78164-01, 2020 WL 7056412 (Dec. 3, 2020) (emphasis added).  As the Commissioner explained further in a footnote within the Federal Register text:

> FN2: This means that we will use these final rules on and after their effective date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. *If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of*

> *these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.*

*Id.* (emphasis added).

Plaintiff cites no authority for his request that we require the Commissioner to apply since-deleted Listings requirements to his claim. We will not issue such a directive on remand.

## V.  CONCLUSION

The Commissioner agrees that there is cause for remand and consideration of Plaintiff's application concerning the RFC finding and subsequent steps in the sequential evaluation. While the Commissioner did not accept that there was error at Step Three (the Listings), the Commissioner will be free to reconsider the Step Three finding on remand. Our circuit's caselaw does not compel us to make a ruling on Step Three in these circumstances where Plaintiff has not been subjected to unusual delay. We will vacate the ALJ's decision and remand to the Commissioner for a new decision.

An appropriate order will follow.

BY THE COURT:

/s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE
